# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No. 21-4502

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*vs.*

JANE IVISON GILL,

*Defendant-Appellant.*

On Appeal from an Order of Detention from the
U.S. District Court for the Western District of North Carolina.
D. Ct. No. 1:21-cr-00070-MR-WMC-12
Hon. Martin Reidinger, *Chief U.S. District Judge.*

## Informal Appendix for Appellant Jane Gill

## Volume I of II (Public)

Howard W. Anderson III
LAW OFFICE OF
HOWARD W. ANDERSON III, LLC
P.O. Box 661
Pendleton, SC 29633-0851
864-643-5790
howard@hwalawfirm.com
*CJA Counsel*

TABLE OF CONTENTS TO INFORMAL APPENDIX

*Volume I (Public):*

District Court Docket Sheet ................................................................001

Indictment [Dkt. 3] ...........................................................................007

Magistrate Judge's Order of Detention [Dkt. 111] ..............................028

Transcript of Detention Hearing [Dkt. 165]........................................031

Affirmance of Magistrate Judge's Detention Order [Dkt. 231]............069

Notice of Appeal [Dkt. 233] ..............................................................076

Certificate of Service ......................................................................... COS


*Volume II (Sealed):*

Pretrial Services Report [Dkt. 49] ......................................................089

Certificate of Service ......................................................................... COS

# U.S. District Court
## Western District of North Carolina (Asheville)
## CRIMINAL DOCKET FOR CASE #: 1:21-cr-00070-MR-WCM-12

Case title: USA v. Barker, et al.                          Date Filed: 08/03/2021

Assigned to: Chief Judge Martin Reidinger
Referred to: Magistrate Judge W. Carleton
Metcalf

Appeals court case number: 21-4502 4th
Circuit

**Defendant (12)**

**Jane Ivison Gill**                    represented by    **Howard W. Anderson , III**
Law Office of Howard W. Anderson III,
LLC
PO Box 661
176 E. Main Steet
Pendleton, SC 29670
864-643-5790
Fax: 864-332-9798
Email: howard@hwalawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Pending Counts**                                       **Disposition**

21:841(a)(1), 841(b)(1)(A), 841(b)(1)(B)
and 841(b)(1)(C) - CONTROLLED
SUBSTANCE - SELL, DISTRIBUTE, OR
DISPENSE. 21:846 CONSPIRACY TO
DISTRIBUTE CONTROLLED
SUBSTANCE.
(1)

21:841(a)(1) - CONTROLLED
SUBSTANCE - SELL, DISTRIBUTE, OR
DISPENSE
(22)

21:841(a)(1) and 18:2- CONTROLLED
SUBSTANCE - SELL, DISTRIBUTE, OR
DISPENSE
(24)

**Highest Offense Level (Opening)**

Felony

IA 001

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

**USA**        represented by    **Thomas Michael Kent**
Office of the U.S. Attorney--WDNC
233 U.S. Courthouse Bldg.
100 Otis St.
Asheville, NC 28801
828-271-4661
Fax: 828-271-4670
Email: thomas.kent@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Jonathan D. Letzring**
US Attorney's Office, Western District of
NC
100 Otis Street, Suite 233
Asheville, NC 28801
828-259-0655
Email: jonathan.letzring@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/03/2021 | 1 | MOTION to Seal Indictment by USA as to Rebecca Lynn Barker, Robert Allan Burnette, Angela Vance Carver, Derek Michael Cluff, Marcus Brandon Cobaugh, Lindsay Nicole Cobb, David Hunter Creson, William Joseph Craig, Arthur Shane Douville, Jaime Gamez, Justin Caroll Gibson, Jane Ivison Gill, Sarah Jane Gill, Roberto Illerma Ibarra, Elizabeth Gabrielle Mann, Jose Andres Martinez, Keith Allen McMahan, Nicholas Ray Miller, Ryan Warren Muster, Kelly Woodrow Ross, Richard Anthony Swanger, Christy Helen Trull, Michael Kevin Vanlandingham. (hms) Modified text on 8/4/2021 (hms). (Entered: 08/04/2021) |
| 08/03/2021 | 2 | **ORDER granting 1 Motion to Seal Case as to Rebecca Lynn Barker (1), Robert Allan Burnette (2), Angela Vance Carver (3), Derek Michael Cluff (4), Marcus Brandon Cobaugh (5), Lindsay Nicole Cobb (6), David Hunter Creson (7), William Joseph Craig (8), Arthur Shane Douville (9), Jaime Gamez (10), Justin Caroll Gibson (11), Jane Ivison Gill (12), Sarah Jane Gill (13), Roberto Illerma Ibarra (14), Elizabeth Gabrielle Mann (15), Jose Andres Martinez (16), Keith Allen McMahan (17), Nicholas Ray Miller (18), Ryan Warren Muster (19), Kelly Woodrow Ross (20),** |

| | | |
|---|---|---|
| | | **Richard Anthony Swanger (21), Christy Helen Trull (22), Michael Kevin Vanlandingham (23). Signed by District Judge Max O. Cogburn, Jr. on 8/3/2021. (hms) (Entered: 08/04/2021)** |
| 08/03/2021 | 3 | INDICTMENT as to Rebecca Lynn Barker (1) count(s) 1, 24, 25, Robert Allan Burnette (2) count(s) 1, 5, 6, 7, Angela Vance Carver (3) count(s) 1, 5, 27, Derek Michael Cluff (4) count(s) 1, 17, Marcus Brandon Cobaugh (5) count(s) 1, 31, Lindsay Nicole Cobb (6) count(s) 1, 32, David Hunter Creson (7) count(s) 1, 26, William Joseph Craig (8) count(s) 1, 5, 8, 13-16, 27, 38, Arthur Shane Douville (9) count(s) 1, 28, Jaime Gamez (10) count(s) 1, 2, 12, 18, Justin Caroll Gibson (11) count(s) 1, 9, 10, 11, Jane Ivison Gill (12) count(s) 1, 22, 24, Sarah Jane Gill (13) count(s) 1, 26, Roberto Illerma Ibarra (14) count(s) 1, 28, Elizabeth Gabrielle Mann (15) count(s) 1, 31, Jose Andres Martinez (16) count(s) 1, 30, 32, 33, 34, Keith Allen McMahan (17) count(s) 1, 28, Nicholas Ray Miller (18) count(s) 1, 32, 35, 36, 37, Ryan Warren Muster (19) count(s) 1, 4, 29, Kelly Woodrow Ross (20) count(s) 1, 3, Richard Anthony Swanger (21) count(s) 1, 19, 20, 23, Christy Helen Trull (22) count(s) 1, 27, 32, Michael Kevin Vanlandingham (23) count(s) 1, 21. (Attachments: # 1 Unredacted Signature Page, # 2 Cover Sheet) (hms) Modified docket text on 8/16/2021 to indicate this pleading has been unsealed. (maf) (Entered: 08/04/2021) |
| 08/03/2021 | 17 | Arrest Warrant Issued *(Sealed - Case Participants)* in case as to Jane Ivison Gill. (Attachments: # 1 Warrant Page Identifier) (hms) (Entered: 08/04/2021) |
| 08/15/2021 | | Arrest of: Rebecca Lynn Barker, Robert Allan Burnette, Angela Vance Carver, Derek Michael Cluff, Marcus Brandon Cobaugh, David Hunter Creson, William Joseph Craig, Arthur Shane Douville, Jaime Gamez, Justin Caroll Gibson, Jane Ivison Gill, Sarah Jane Gill, Elizabeth Gabrielle Mann, Nicholas Ray Miller, Kelly Woodrow Ross, Richard Anthony Swanger, Christy Helen Trull, Michael Kevin Vanlandingham. (kby) (Entered: 08/15/2021) |
| 08/15/2021 | | NOTICE OF HEARING as to William Joseph Craig, Jane Ivison Gill, Sarah Jane Gill: Initial Appearances (remote by video) set for 8/16/2021 to begin at 09:00 AM in Courtroom 2, 100 Otis St, Asheville, NC 28801 before Magistrate Judge W. Carleton Metcalf. *This is your only notice - you will not receive a separate document.*(kby) (Entered: 08/15/2021) |
| 08/16/2021 | 27 | MOTION to Unseal Case by USA as to Rebecca Lynn Barker, Robert Allan Burnette, Angela Vance Carver, Derek Michael Cluff, Marcus Brandon Cobaugh, Lindsay Nicole Cobb, David Hunter Creson, William Joseph Craig, Arthur Shane Douville, Jaime Gamez, Justin Caroll Gibson, Jane Ivison Gill, Sarah Jane Gill, Roberto Illerma Ibarra, Elizabeth Gabrielle Mann, Jose Andres Martinez, Keith Allen McMahan, Nicholas Ray Miller, Ryan Warren Muster, Kelly Woodrow Ross, Richard Anthony Swanger, Christy Helen Trull, Michael Kevin Vanlandingham. Motions referred to W. Carleton Metcalf (kby) (Entered: 08/16/2021) |
| 08/16/2021 | 28 | **ORDER granting 27 Motion to Unseal Case as to Rebecca Lynn Barker (1), Robert Allan Burnette (2), Angela Vance Carver (3), Derek Michael Cluff (4), Marcus Brandon Cobaugh (5), Lindsay Nicole Cobb (6), David Hunter Creson (7), William Joseph Craig (8), Arthur Shane Douville (9), Jaime Gamez (10), Justin Caroll Gibson (11), Jane Ivison Gill (12), Sarah Jane Gill (13), Roberto Illerma Ibarra (14), Elizabeth Gabrielle Mann (15), Jose Andres Martinez (16), Keith Allen McMahan (17), Nicholas Ray Miller (18), Ryan Warren Muster (19), Kelly Woodrow Ross (20), Richard Anthony Swanger (21), Christy Helen Trull (22), Michael Kevin Vanlandingham (23). Signed by Magistrate Judge W. Carleton Metcalf on 8/16/2021. (kby) (Entered: 08/16/2021)** |
| 08/16/2021 | | Minute Entry: INITIAL APPEARANCE as to Jane Ivison Gill held before Magistrate |

IA 003

| | | |
|---|---|---|
| | | Judge W. Carleton Metcalf. Defendant appeared remotely from the detention facility and consented to proceed by video. Defendant advised of rights & charges. Defendant moved for appointment of counsel. Defendant filed a financial affidavit. Court approved appointment of counsel. Government moved for detention and requested a brief continuance of the hearing. Defendant detained pending detention hearing. Arraignment and Detention hearings set for 8/18/2021 10:15 AM in Courtroom 2, 100 Otis St, Asheville, NC 28801 before Magistrate Judge W. Carleton Metcalf. Defendant confirmed her ability to see, hear and understand all parts of the proceeding.Government attorney: Thomas Kent. Defendant attorney: W. Kelly Johnson. Court Reporter: DCR. (kby) (Entered: 08/16/2021) |
| 08/16/2021 | 30 | CJA 23 (Ex Parte) Financial Affidavit by Jane Ivison Gill (kby) (Entered: 08/16/2021) |
| 08/16/2021 | | **ORAL ORDER as to Jane Ivison Gill granting Oral Motion to Appoint Counsel. Entered by Magistrate Judge W. Carleton Metcalf on 8/16/2021. (kby)** (Entered: 08/16/2021) |
| 08/16/2021 | | NOTICE OF HEARING as to Jane Ivison Gill: Arraignment and Detention hearings set for 8/18/2021 10:15 AM in Courtroom 2, 100 Otis St, Asheville, NC 28801 before Magistrate Judge W. Carleton Metcalf. *This is your only notice - you will not receive a separate document.*(kby) (Entered: 08/16/2021) |
| 08/16/2021 | 31 | NOTICE OF ATTORNEY APPEARANCE Jonathan D. Letzring appearing for USA. (Letzring, Jonathan) (Entered: 08/16/2021) |
| 08/16/2021 | | **CJA 20 as to Jane Ivison Gill: Appointment of Attorney Howard W. Anderson, III for Jane Ivison Gill. (Click on this link to obtain the CJA 19 Notice to Appointed Counsel of Public Disclosure of Attorney Fee Information) (maf)** (Entered: 08/16/2021) |
| 08/16/2021 | 49 | PRETRIAL REPORT *(SEALED - Attorney)* as to Jane Ivison Gill (available to USA, Jane Ivison Gill) (Tamara S. Styles - bgs) (Entered: 08/16/2021) |
| 08/18/2021 | | Minute Order: ARRAIGNMENT as to Jane Ivison Gill (12) Counts 1,22,24 and DETENTION HEARING held before Magistrate Judge W. Carleton Metcalf. Defendant pled not guilty and requested a jury trial. During officer's testimony during detention hearing, defense counsel made oral motion for production of Grand Jury transcripts under Rule 26.2(a) or to exclude the witness's testimony. The court denied the motion without prejudice. Shortly thereafter, Defendant renewed her motion and requested production of DEA 6 documents or that the witness's testimony be excluded. The court denied the request to exclude the officer's testimony and indicated that the hearing could be held open while the Government gathered the applicable information. Defendant requested that the hearing continue, reserving her right to seek to re-open the hearing if necessary following the production of the Government's discovery. Defendant detained following argument. Government attorney: Thomas Kent. Defendant attorney: Howard Anderson. Court reporter: DCR. (kby) (Entered: 08/18/2021) |
| 08/18/2021 | | **SCHEDULING ORDER as to Jane Ivison Gill. (Click on this link to obtain the Standard Arraignment Order) . Docket Call set for 9/7/2021 09:00 AM in Courtroom 1, 100 Otis St, Asheville, NC 28801 before Chief Judge Martin Reidinger. Entered by Magistrate Judge W. Carleton Metcalf on 8/18/2021. (kby)** (Entered: 08/18/2021) |
| 08/18/2021 | | **Standard Discovery Order in case as to Jane Ivison Gill. (Click on this link to obtain the Standard Criminal Discovery Order) . Entered by Magistrate Judge W. Carleton Metcalf on 8/18/2021. (kby)** (Entered: 08/18/2021) |
| 08/18/2021 | | **ORAL ORDER granting continuance pursuant to 18 U.S.C. 3161(c)(2). The ends of** |

| | | |
|---|---|---|
| | | justice served by the granting of the continuance outweigh the best interest of the public and the Defendant in a speedy trial as to Jane Ivison Gill. Time excluded from 9/7/2021 until 11/8/2021. Docket Call set for 11/8/2021 09:00 AM in Courtroom 1, 100 Otis St, Asheville, NC 28801 before Chief Judge Martin Reidinger. Entered by Magistrate Judge W. Carleton Metcalf on 8/18/2021. (kby) (Entered: 08/18/2021) |
| 08/18/2021 | 95 | **ORDER pursuant to the Due Process Protection Act as to Jane Ivison Gill. Signed by Magistrate Judge W. Carleton Metcalf on 8/18/2021. (kby) (Entered: 08/18/2021)** |
| 08/18/2021 | 111 | **ORDER OF DETENTION as to Jane Ivison Gill. Signed by Magistrate Judge W. Carleton Metcalf on 8/18/2021. (kby) (Entered: 08/19/2021)** |
| 08/19/2021 | 118 | NOTICE OF APPEAL from Order of Magistrate Judge to District Court by Jane Ivison Gill re 111 Order of Detention. (Anderson, Howard). (Entered: 08/19/2021) |
| 08/19/2021 | 133 | Arrest Warrant Returned Executed on 8/15/2021 in case as to Jane Ivison Gill. (rhf) (Entered: 08/20/2021) |
| 08/24/2021 | 165 | TRANSCRIPT of Arraignment Hearing and Detention Hearing as to Jane Ivison Gill held on August 18, 2021 before Judge W. Carleton Metcalf. Court Reporter: Tracy Rae Dunlap, Telephone number 828.771.7217. **NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a *Notice of Intent to Request Redaction* and 21 calendar days to file a *Redaction Request*. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER. Policy at www.ncwd.uscourts.gov** Release of Transcript Restriction set for 11/19/2021. (Reporter: Tracy Dunlap, 828-771-7217) (Entered: 08/24/2021) |
| 09/09/2021 | 213 | Unopposed MOTION for Extension of Time to File *Pretrial Motions until 10/18/2021\** by Jane Ivison Gill. Motions referred to W. Carleton Metcalf (Anderson, Howard) Modified text to correct date of requested extension* on 9/9/2021. NEF Regenerated (ejb). (Entered: 09/09/2021) |
| 09/09/2021 | | **TEXT-ONLY ORDER granting 213 Motion for Extension of Time to File as to Jane Ivison Gill (12) *Text of Order: The Defendant's Motion is GRANTED, and the deadline for filing pretrial motions is hereby extended to October 18, 2021. So Ordered.* Entered by Chief Judge Martin Reidinger on 9/9/2021. (TWG) (Entered: 09/09/2021)** |
| 09/17/2021 | 229 | MOTION to Expedite *review of detention order* by Jane Ivison Gill. (Anderson, Howard) (Entered: 09/17/2021) |
| 09/20/2021 | 231 | **ORDER as to Jane Ivison Gill (12): that Deft's 118 Appeal of Magistrate Judge Order of Detention to District Court, which the Court construes as a Motion to Revoke or Amend the Detention Order, is DENIED, and the Deft shall remain detained. Signed by Chief Judge Martin Reidinger on 9/20/2021. (ejb) (Entered: 09/20/2021)** |
| 09/20/2021 | | **TEXT-ONLY ORDER denying as moot 229 Motion to Expedite as to Jane Ivison Gill (12) *Text of Order: The Defendant's Motion to Expedite is denied as moot. So Ordered.* Entered by Chief Judge Martin Reidinger on 9/20/21. (LMR) (Entered: 09/20/2021)** |
| 09/20/2021 | 233 | Interlocutory NOTICE OF APPEAL of Conditions of Release by Jane Ivison Gill as to 231 Order, 111 Order of Detention (Anderson, Howard) Modified text on 9/21/2021 (hms). NEF regenerated. (Entered: 09/20/2021) |
| 09/21/2021 | 237 | Transmission of Notice of Appeal as to Jane Ivison Gill to US Court of Appeals re 233 |

IA 005

| | | Notice of Appeal - Conditions of Release. (hms) (Entered: 09/21/2021) |
|---|---|---|
| 09/21/2021 | 238 | USCA Case Number as to Jane Ivison Gill 21-4502 for 233 Notice of Appeal, Conditions of Release USCA Case Manager: Jeffrey S. Neal. (hms) (Entered: 09/21/2021) |
| 09/21/2021 | 239 | ORDER of USCA as to Jane Ivison Gill re: appointing Howard Walton Anderson III, as counsel on appeal [21-4502]. (hms) (Entered: 09/21/2021) |

**PACER Service Center**

**Transaction Receipt**

09/23/2021 10:00:11

| PACER Login: | HWALawFirm | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 1:21-cr-00070-MR-WCM |
| Billable Pages: | 6 | Cost: | 0.60 |
| Exempt flag: | Exempt | Exempt reason: | Exempt CJA |

IA 006

FILED
ASHEVILLE, N.C.

AUG 03 2021

U.S. DISTRICT COURT
W. DIST. OF N.C.

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

UNITED STATES OF AMERICA )

v. )

1) REBECCA LYNN BARKER )
2) ROBERT ALLAN BURNETTE )
    a/k/a "Mater" )
3) ANGELA VANCE CARVER )
4) DEREK MICHAEL CLUFF )
5) MARCUS BRANDON COBAUGH )
6) LINDSAY NICOLE COBB )
    a/k/a "Lou" )
7) DAVID HUNTER CRESON )
8) WILLIAM JOSEPH CRAIG )
    a/k/a "Joey" )
9) ARTHUR SHANE DOUVILLE )
10) JAIME GAMEZ )
11) JUSTIN CAROLL GIBSON )
    a/k/a "Baby Face" )
12) JANE IVISON GILL )
13) SARAH JANE GILL )
14) ROBERTO ILLERMA IBARRA )
    a/k/a "Chico" )
15) ELIZABETH GABRIELLE MANN )
    a/k/a "Gabby" )
16) JOSE ANDRES MARTINEZ )
    a/k/a "Andy" )
17) KEITH ALLEN McMAHAN )
18) NICHOLAS RAY MILLER )
19) RYAN WARREN MUSTER )
20) KELLY WOODROW ROSS )
21) RICHARD ANTHONY SWANGER )
22) CHRISTY HELEN TRULL )
23) MICHAEL KEVIN VANLANDINGHAM )

DOCKET NO. **1:21 CR** 70- MR-WCM

**BILL OF INDICTMENT**

Violations:
    21 USC § 846
    21 USC § 841(a)(1)
    18 USC § 924(c)(1)(A)
    18 USC § 922(g)
    18 USC § 2

**THE GRAND JURY CHARGES:**

**COUNT ONE**

From in or around April of 2019 and continuing until on or about May 21, 2021, in

Haywood, Jackson and Buncombe Counties, which are within the Western District of North Carolina, and elsewhere,

1)  REBECCA LYNN BARKER
2)  ROBERT ALLAN BURNETTE a/k/a "Mater"
3)  ANGELA VANCE CARVER
4)  DEREK MICHAEL CLUFF
5)  MARCUS BRANDON COBAUGH
6)  LINDSAY NICOLE COBB a/k/a "Lou"
7)  DAVID HUNTER CRESON
8)  WILLIAM JOSEPH CRAIG a/k/a "Joey"
9)  ARTHUR SHANE DOUVILLE
10) JAIME GAMEZ
11) JUSTIN CAROLL GIBSON a/k/a "Baby Face"
12) JANE IVISON GILL
13) SARAH JANE GILL
14) ROBERTO ILLERMA IBARRA a/k/a "Chico"
15) ELIZABETH GABRIELLE MANN a/k/a "Gabby"
16) JOSE ANDRES MARTINEZ a/k/a "Andy"
17)  KEITH ALLEN McMAHAN
18) NICHOLAS RAY MILLER
19) RYAN WARREN MUSTER
20) KELLY WOODROW ROSS
21)  RICHARD ANTHONY SWANGER
22) CHRISTY HELEN TRULL
23) MICHAEL KEVIN VANLANDINGHAM

did knowingly and intentionally combine, conspire, confederate and agree with each other, and others, both known and unknown to the Grand Jury, to distribute and to possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance, and in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(B) and 841(b)(1)(C).

It is further alleged that, with respect to the conspiracy offense charged in Count One, 50 grams or more of actual methamphetamine, a Schedule II controlled substance, are attributable to, and were reasonably foreseeable by **1) REBECCA LYNN BARKER, 2) ROBERT ALLAN BURNETTE a/k/a "Mater," 3) ANGELA VANCE CARVER, 6) LINDSAY NICOLE COBB a/k/a "Lou," 7) DAVID HUNTER CRESON, 8) WILLIAM JOSEPH CRAIG a/k/a "Joey," 9) ARTHUR SHANE DOUVILLE, 11) JUSTIN CAROLL GIBSON a/k/a "Baby Face," 12) JANE IVISON GILL, 13) SARAH JANE GILL, 14) ROBERTO ILLERMA IBARRA a/k/a "Chico," 16) JOSE ANDRES MARTINEZ a/k/a "Andy," 17) KEITH ALLEN McMAHAN, 18) NICHOLAS RAY MILLER,** and **22) CHRISTY HELEN TRULL.** Accordingly, Title 21, United States Code, Section 841(b)(1)(A) is applicable to **1) REBECCA LYNN BARKER, 2) ROBERT ALLAN BURNETTE a/k/a "Mater," 3) ANGELA VANCE CARVER, 6) LINDSAY NICOLE COBB a/k/a "Lou," 7) DAVID HUNTER CRESON, 8) WILLIAM JOSEPH CRAIG a/k/a "Joey," 9) ARTHUR SHANE**

DOUVILLE, 11) JUSTIN CAROLL GIBSON a/k/a "Baby Face," 12) JANE IVISON GILL, 13) SARAH JANE GILL, 14) ROBERTO ILLERMA IBARRA a/k/a "Chico," 16) JOSE ANDRES MARTINEZ a/k/a "Andy," 17) KEITH ALLEN McMAHAN, 18) NICHOLAS RAY MILLER, and 22) CHRISTY HELEN TRULL.

It is further alleged that, with respect to the conspiracy offense charged in Count One, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, are attributable to, and were reasonably foreseeable by 1) REBECCA LYNN BARKER, 2) ROBERT ALLAN BURNETTE a/k/a "Mater," 3) ANGELA VANCE CARVER, 7) DAVID HUNTER CRESON, 8) WILLIAM JOSEPH CRAIG a/k/a "Joey," 12) JANE IVISON GILL, 13) SARAH JANE GILL, 19) RYAN WARREN MUSTER, and 21) RICHARD ANTHONY SWANGER. Accordingly, Title 21, United States Code, Section 841(b)(1)(A) is applicable to 1) REBECCA LYNN BARKER, 2) ROBERT ALLAN BURNETTE a/k/a "Mater," 3) ANGELA VANCE CARVER, 7) DAVID HUNTER CRESON, 8) WILLIAM JOSEPH CRAIG a/k/a "Joey," 12) JANE IVISON GILL, 13) SARAH JANE GILL, 19) RYAN WARREN MUSTER, and 21) RICHARD ANTHONY SWANGER.

It is further alleged that, with respect to the conspiracy offense charged in Count One, 5 grams or more of actual methamphetamine, a Schedule II controlled substance, are attributable to, and were reasonably foreseeable by 4) DERRICK MICHAEL CLUFF, 5) MARCUS BRANDON COBAUGH, 10) JAIME GAMEZ, 15) ELIZABETH GABRIELLE MANN a/k/a "Gabby," 19) RYAN WARREN MUSTER, and 23) MICHAEL KEVIN VANLANDINGHAM. Accordingly, Title 21, United States Code, Section 841(b)(1)(B) is applicable to 4) DERRICK MICHAEL CLUFF, 5) MARCUS BRANDON COBAUGH, 10) JAIME GAMEZ, 15) ELIZABETH GABRIELLE MANN a/k/a "Gabby," 19) RYAN WARREN MUSTER, and 23) MICHAEL KEVIN VANLANDINGHAM.

It is further alleged that, with respect to the conspiracy offense charged in Count One, 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, are attributable to, and were reasonably foreseeable by 9) ARTHUR SHANE DOUVILLE, 10) JAIME GAMEZ, 11) JUSTIN CAROLL GIBSON a/k/a Baby Face," 14) ROBERTO ILLERMA IBARRA a/k/a "Chico," 17) KEITH ALLEN McMAHAN, and 22) CHRISTY HELEN TRULL. Accordingly, Title 21, United States Code, Section 841(b)(1)(B) is applicable to 9) ARTHUR SHANE DOUVILLE, 10) JAIME GAMEZ, 11) JUSTIN CAROLL GIBSON a/k/a Baby Face," 14) ROBERTO ILLERMA IBARRA a/k/a "Chico," 17) KEITH ALLEN McMAHAN, and 22) CHRISTY HELEN TRULL.

It is further alleged that, with respect to the conspiracy offense charged in Count One, a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, is attributable to, and was reasonably foreseeable by 5) MARCUS BRANDON COBAUGH, 6) LINDSAY NICOLE COBB a/k/a "Lou," 15) ELIZABETH GABRIELLE MANN a/k/a "Gabby," 16) JOSE ANDRES MARTINEZ a/k/a "Andy," 18) NICHOLAS RAY MILLER, and 20) KELLY WOODROW ROSS. Accordingly, Title 21,

3

IA 009

United States Code, Section 841(b)(1)(C) is applicable to **5) MARCUS BRANDON COBAUGH, 6) LINDSAY NICOLE COBB a/k/a "Lou," 15) ELIZABETH GABRIELLE MANN a/k/a "Gabby," 16) JOSE ANDRES MARTINEZ a/k/a "Andy," 18) NICHOLAS RAY MILLER,** and **20) KELLY WOODROW ROSS.**

In violation of Title 21, United States Code, Section 846.

## COUNT TWO

On or about April 20, 2019, in Haywood County, within the Western District of North Carolina,

### 10) JAMIE GAMEZ

did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

1.    Said offense involved a mixture or substance containing a detectable amount of methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT THREE

On or about October 8, 2019, in Haywood County, within the Western District of North Carolina,

### 20) KELLY WOODROW ROSS

did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

1.    Said offense involved a mixture or substance containing a detectable amount of methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

4

IA 010

## COUNT FOUR

On or about October 25, 2019, in Haywood County, within the Western District of North Carolina,

### 19) RYAN WARREN MUSTER

did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

1.    Said offense involved 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT FIVE

On or about November 1, 2019, in Haywood County, within the Western District of North Carolina,

### 2) ROBERT ALLAN BURNETTE a/k/a "Mater"
### 3) ANGELA VANCE CARVER
### 8) WILLIAM JOSEPH CRAIG a/k/a "Joey"

aiding and abetting others both known and unknown to the Grand Jury, did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

1.    Said offense involved 50 grams or more of "actual" methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

5

IA 011

## COUNT SIX

On or about November 2, 2019, in Haywood County, within the Western District of North Carolina,

### 2) ROBERT ALLAN BURNETTE a/k/a "Mater"

did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

1.      Said offense involved 50 grams or more of "actual" methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT SEVEN

On or about November 2, 2019, in Haywood, within the Western District of North Carolina,

### 2) ROBERT ALLAN BURNETTE a/k/a "Mater"

in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, that being possession with intent to distribute a controlled substance, did knowingly possess a firearm, that being, a North American Arms, .22 magnum mini revolver.

In violation of Title 18, United States Code, Section 924(c)(1)(A).

## COUNT EIGHT

On or about November 4, 2019, in Buncombe County, within the Western District of North Carolina,

### 8) WILLIAM JOSEPH CRAIG a/k/a "Joey"

did knowingly and intentionally distribute a quantity of methamphetamine, a Schedule II controlled substance.

1.      Said offense involved a mixture or substance containing a detectable amount of methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

6

IA 012

## COUNT NINE

On or about December 4, 2019, in Haywood County, within the Western District of North Carolina,

**11) JUSTIN CAROLL GIBSON a/k/a "Baby Face"**

did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

1. Said offense involved 50 grams or more of "actual" methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT TEN

On or about December 4, 2019, in Haywood County, within the Western District of North Carolina,

**11) JUSTIN CAROLL GIBSON a/k/a "Baby Face"**

in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, that being possession with intent to distribute a controlled substance, did knowingly possess firearms, those being, a Smith & Wesson, Model 442 Airweight, .38 cal. revolver and a Taurus, Model PT111 Millennium G2, 9mm semi-automatic pistol.

In violation of Title 18, United States Code, Section 924(c)(1)(A).

## COUNT ELEVEN

On or about December 4, 2019, in Haywood County, within the Western District of North Carolina,

**11) JUSTIN CAROLL GIBSON a/k/a "Baby Face"**

knowing that he had previously been convicted of at least one crime punishable by imprisonment for a term exceeding one year, did knowingly possess firearms and ammunition in and affecting commerce, those being, a Smith & Wesson, Model 442 Airweight, .38 cal. revolver; a Taurus, Model PT111 Millennium G2, 9mm semi-automatic pistol; 53 rounds of Remington 9mm ammunition; 3 rounds of Winchester 9mm ammunition; and 3 rounds of Federal 9mm ammunition.

In violation of Title 18, United States Code, Section 922(g)(1).

7

## COUNT TWELVE

On or about December 31, 2019, in Haywood County, within the Western District of North Carolina,

**10)  JAIME GAMEZ**

did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

    1.     Said offense involved a mixture or substance containing a detectable amount of methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT THIRTEEN

On or about January 30, 2020, in Buncombe County, within the Western District of North Carolina,

**8)  WILLIAM JOSEPH CRAIG a/k/a "Joey"**

did knowingly and intentionally distribute a quantity of methamphetamine, a Schedule II controlled substance.

    1.     Said offense involved a mixture or substance containing a detectable amount of methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT FOURTEEN

On or about January 31, 2020, in Buncombe County, within the Western District of North Carolina,

**8)  WILLIAM JOSEPH CRAIG a/k/a "Joey"**

did knowingly and intentionally distribute a quantity of methamphetamine, a Schedule II controlled substance.

    1.     Said offense involved 5 grams or more of "actual" methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

8

IA 014

## COUNT FIFTEEN

On or about March 6, 2020, in Buncombe County, within the Western District of North Carolina,

### 8) WILLIAM JOSEPH CRAIG a/k/a "Joey"

did knowingly and intentionally distribute a quantity of methamphetamine, a Schedule II controlled substance.

1.    Said offense involved 5 grams or more of "actual" methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT SIXTEEN

On or about March 6, 2020, in Buncombe County, within the Western District of North Carolina,

### 8) WILLIAM JOSEPH CRAIG a/k/a "Joey"

did knowingly and intentionally distribute a quantity of methamphetamine, a Schedule II controlled substance.

1.    Said offense involved 5 grams or more of "actual" methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT SEVENTEEN

On or about March 11, 2020, in Haywood County, within the Western District of North Carolina,

### 4) DEREK MICHAEL CLUFF

did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

1.    Said offense involved 5 grams or more of "actual" methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

9

IA 015

### COUNT EIGHTEEN

On or about March 12, 2020, in Haywood County, within the Western District of North Carolina,

### 10) JAIME GAMEZ

did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

    1.     Said offense involved 5 grams or more of "actual" methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

### COUNT NINETEEN

On or about March 13, 2020, in Haywood County, within the Western District of North Carolina,

### 21) RICHARD ANTHONY SWANGER

did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

    1.     Said offense involved a mixture or substance containing a detectable amount of methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

### COUNT TWENTY

On or about March 13, 2020, in Haywood County, within the Western District of North Carolina,

### 21) RICHARD ANTHONY SWANGER

in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, that being possession with intent to distribute a controlled substance, did knowingly possess firearms, that being a Taurus, Model PT24/7, .45 cal. semi-automatic pistol and a Marlin, Model XT-22, .22LR bolt-action rifle.

In violation of Title 18, United States Code, Section 924(c)(1)(A).

10

## COUNT TWENTY-ONE

On or about March 18, 2020, in Haywood County, within the Western District of North Carolina,

### 23)  MICHAEL KEVIN VANLANDINGHAM

did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

    1.      Said offense involved 5 grams or more of "actual" methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT TWENTY-TWO

On or about March 26, 2020, in Haywood County, within the Western District of North Carolina,

### 12)  JANE IVISON GILL

did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

    1.      Said offense involved 50 grams or more of "actual" methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT TWENTY-THREE

On or about March 26, 2020, in Haywood County, within the Western District of North Carolina,

### 21)  RICHARD ANTHONY SWANGER

did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

    1.      Said offense involved a mixture or substance containing a detectable amount of methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

11

IA 017

## COUNT TWENTY-FOUR

On or about March 26, 2020, in Haywood County, within the Western District of North Carolina,

**1)  REBECCA LYNN BARKER**
**12)  JANE IVISON GILL**

aiding and abetting others known and unknown to the Grand Jury did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

1.    Said offense involved 50 grams or more of "actual" methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT TWENTY-FIVE

On or about March 26, 2020, in Haywood, within the Western District of North Carolina,

**1)  REBECCA LYNN BARKER**

in furtherance of a drug trafficking crime for which she may be prosecuted in a court of the United States, that being possession with intent to distribute a controlled substance, did knowingly possess firearms, those being, a Davis Industries, Model DM-22, .22 magnum derringer and a Braztech, Model 5411220, .410 gauge shotgun.

In violation of Title 18, United States Code, Section 924(c)(1)(A).

12

IA 018

### COUNT TWENTY-SIX

On or about April 13, 2020, in Haywood County, within the Western District of North Carolina, and elsewhere,

**7)  DAVID HUNTER CRESON
13)  SARAH JANE GILL**

aiding and abetting others known and unknown to the Grand Jury did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

1.      Said offense involved 50 grams or more of "actual" methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

### COUNT TWENTY-SEVEN

On or about April 17, 2020, in Buncombe County, within the Western District of North Carolina,

**3)  ANGELA VANCE CARVER
8)  WILLIAM JOSEPH CRAIG a/k/a "Joey"
22)  CHRISTY HELEN TRULL**

aiding and abetting others both known and unknown to the Grand Jury did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

1.      Said offense involved 5 grams or more of "actual" methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

13

IA 019

## COUNT TWENTY-EIGHT

On or about May 7, 2020, in Jackson and Haywood Counties, within the Western District of North Carolina, and elsewhere,

**9)  ARTHUR SHANE DOUVILLE**
**14)  ROBERTO ILLERMA IBARRA a/k/a "Chico"**
**17)  KEITH ALLEN McMAHAN**

aiding and abetting others both known and unknown to the Grand Jury did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

1.      Said offense involved 50 grams or more of "actual" methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT TWENTY-NINE

On or about May 15, 2020, in Jackson County, within the Western District of North Carolina,

**19)  RYAN WARREN MUSTER**

did knowingly and intentionally distribute a quantity of methamphetamine, a Schedule II controlled substance.

1.      Said offense involved a mixture or substance containing a detectable amount of methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

14

## COUNT THIRTY

On or about August 12, 2020, in Haywood County, within the Western District of North Carolina,

**16) JOSE ANDRES MARTINEZ a/k/a "Andy"**

knowing that he had previously been convicted of at least one crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm and ammunition in and affecting commerce, that being, a Lorcin, Model L25, .25 cal. semi-automatic pistol; 6 rounds of GFI .25 cal. ammunition; and 2 rounds of CCI .25 cal. ammunition.

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT THIRTY-ONE

On or about November 10, 2020, in Haywood County, within the Western District of North Carolina,

**5) MARCUS BRANDON COBAUGH**
**15) ELIZABETH GABRIELLE MANN a/k/a "Gabby"**

did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

1.    Said offense involved 5 grams or more of "actual" methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT THIRTY-TWO

On or about November 19, 2020, in Haywood and Buncombe Counties, within the Western District of North Carolina,

**6) LINDSAY NICOLE COBB a/k/a "Lou"**
**16) JOSE ANDRES MARTINEZ a/k/a "Andy"**
**18) NICHOLAS RAY MILLER**
**22) CHRISTY HELEN TRULL**

did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

1.    Said offense involved 50 grams or more of "actual" methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

15

IA 021

## COUNT THIRTY-THREE

On or about November 19, 2020, in Haywood County, within the Western District of North Carolina,

### 16)  JOSE ANDRES MARTINEZ a/k/a "Andy"

in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, that being possession with intent to distribute a controlled substance, did knowingly possess a firearm, that being a Bersa, Model Thunder 380, .380 cal. semi-automatic pistol.

In violation of Title 18, United States Code, Section 924(c)(1)(A).

## COUNT THIRTY-FOUR

On or about November 19, 2020, in Haywood County, within the Western District of North Carolina,

### 16)  JOSE ANDRES MARTINEZ a/k/a "Andy"

knowing that he had previously been convicted of at least one crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm and ammunition in and affecting commerce, that being, a Bersa, Model Thunder 380, .380 cal. semi-automatic pistol; and 1 round of Hornady .380 cal. ammunition.

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT THIRTY-FIVE

On or about December 5, 2020, in Haywood County, within the Western District of North Carolina,

### 18)  NICHOLAS RAY MILLER

knowing that he had previously been convicted of at least one crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm and ammunition in and affecting commerce, that being, a Ruger, Model P89DC, 9mm semi-automatic pistol; 5 rounds of Winchester 9mm ammunition; and 9 rounds of Blazer 9mm ammunition.

In violation of Title 18, United States Code, Section 922(g)(1).

16

IA 022

## COUNT THIRTY-SIX

On or about December 7, 2020, in Haywood County, within the Western District of North Carolina,

### 18)  NICHOLAS RAY MILLER

did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

    1.      Said offense involved 5 grams or more of "actual" methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT THIRTY-SEVEN

On or about December 7, 2020, in Haywood County, within the Western District of North Carolina,

### 18)  NICHOLAS RAY MILLER

knowing that he had previously been convicted of at least one crime punishable by imprisonment for a term exceeding one year, did knowingly possess ammunition in and affecting commerce, that being, 5 rounds of Winchester 9mm ammunition; 1 round of Maxxtech 9mm ammunition; and 1 round of CBC .45 cal. ammunition

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT THIRTY-EIGHT

On or about May 21, 2021, in Buncombe County, within the Western District of North Carolina,

### 8)  WILLIAM JOSEPH CRAIG a/k/a "Joey"

did knowingly and intentionally possess with intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.

    1.      Said offense involved a mixture or substance containing a detectable amount of methamphetamine.

In violation of Title 21, United States Code, Section 841(a)(1).

17

IA 023

## PRIOR CONVICTIONS PURSUANT TO TITLE 21,
## UNITED STATES CODE, SECTION 851

Before **8) WILLIAM JOSEPH CRAIG a/k/a "Joey"** committed the offenses charged in Counts One, Five, Eight, Thirteen, Fourteen, Fifteen, Sixteen, Twenty-Seven and Thirty-Eight of the Bill of Indictment, **8) WILLIAM JOSEPH CRAIG a/k/a "Joey"** had a final conviction for a serious drug felony offense – including a June 18, 2007 conviction in the Western District of North Carolina for Conspiracy to Possess with Intent to Distribute Methamphetamine – for which **8) WILLIAM JOSEPH CRAIG a/k/a "Joey"** served a term of imprisonment of more than 12 months and for which **8) WILLIAM JOSEPH CRAIG's a/k/a "Joey's"** release from any term of imprisonment was within 15 years of the commencement of the instant offense.

Before **10) JAIME GAMEZ** committed the offenses charged in Counts One, Two, Twelve and Eighteen of the Bill of Indictment, **10) JAIME GAMEZ** had a final conviction for a serious drug felony offense – including an April 30, 2007 conviction in the Western District of North Carolina for Possession with Intent to Distribute Methamphetamine and an October 9, 2014 conviction in the Western District of North Carolina for Possession with Intent to Distribute Methamphetamine – for which **10) JAIME GAMEZ** served a term of imprisonment of more than 12 months and for which **10) JAIME GAMEZ's** release from any term of imprisonment was within 15 years of the commencement of the instant offense.

Before **16) JOSE ANDRES MARTINEZ a/k/a "Andy"** committed the offenses charged in Counts One and Thirty-Two of the Bill of Indictment, **16) JOSE ANDRES MARTINEZ a/k/a "Andy"** had a final conviction for a serious violent felony offense – including a September 3, 2015 conviction in Haywood County Superior Court for two counts of Discharge Firearm into Occupied Dwelling – for which **16) JOSE ANDRES MARTINEZ a/k/a "Andy"** served a term of imprisonment of more than 12 months and for which **16) JOSE ANDRES MARTINEZ's a/k/a "Andy's"** release from any term of imprisonment was within 15 years of the commencement of the instant offense.

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 21 U.S.C. § 853, 18 U.S.C. § 924, and 28 U.S.C. § 2461(c). The following property is subject to forfeiture in accordance with Section 853, 924, and/or 2461(c):

 a. All property which constitutes or is derived from proceeds of the violations set forth in this bill of indictment;

 b. All property used or intended to be used in any manner or part to commit or facilitate such violations;

 c. All firearms or ammunition involved or used in such violations; and

18

IA 024

d.      If, as set forth in 21 U.S.C. § 853(p), any property described in (a), (b), or (c) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendants to the extent of the value of the property described in (a), (b), and (c).

The Grand Jury finds probable cause to believe that the following property is subject to forfeiture on one or more of the grounds stated above:

a.      a North American Arms, .22 magnum mini revolver and 5 rounds of .22 magnum ammunition seized from **2) ROBERT ALLAN BURNETTE a/k/a "Mater"** during a vehicle stop on Asheville Highway in Canton, North Carolina on November 2, 2019 during the course of the investigation;

b.      $363 in United States currency seized from **11) JUSTIN CAROLL GIBSON a/k/a "Baby Face's"** vehicle during a vehicle stop on  Highway 23/74 in Waynesville, North Carolina on December 4, 2019 during the course of the investigation;

c.      a Smith & Wesson, Model 442 Airweight, .38 cal. revolver and a Taurus, Model PT111 Millennium G2, 9mm semi-automatic pistol and ammunition; and 53 rounds of Remington 9mm ammunition, 3 rounds of Winchester 9mm ammunition, and 3 rounds of Federal 9mm ammunition seized from **11) JUSTIN CAROLL GIBSON a/k/a "Baby Face's"** vehicle during a vehicle on Highway 23/74 in Waynesville, North Carolina on December 4, 2019 during the course of the investigation;

d.      $51 in United States currency seized from **10) JAIME GAMEZ** incident to his arrest at his residence at 21 Hilliard Drive in Clyde, North Carolina on March 12, 2020 during the course of the investigation;

e.      a Taurus, Model PT24/7, .45 cal. semi-automatic pistol; 4 rounds of Sellier & Bellot .45 cal. ammunition; 3 rounds of Eldorado .45 cal. ammunition; 3 rounds of Remington .45 cal. ammunition; a Marlin, Model XT-22, .22LR bolt-action rifle; 3 rounds of CCI .22LR ammunition; and 1 round of Federal .22LR ammunition seized from **21) RICHARD ANTHONY SWANGER** during a vehicle stop on White Oak Road in Waynesville, North Carolina on March 13, 2020 during the course of the investigation;

f.      $358 in United States currency seized from **21) MICHAEL KEVIN VANLANDINGHAM** during a vehicle stop on Highway 23/74 in Clyde, North Carolina on March 18, 2020 during the course of the investigation;

19

IA 025

g.     a Davis Industries, Model DM-22, .22 magnum derringer seized from **1) REBECCA LYNN BARKER's** purse during a vehicle stop on Highway 209 in Clyde, North Carolina on March 26, 2020 during the course of the investigation;

h.     $2,169 in United States currency seized from **12) JANE IVISON GILL's** vehicle incident to her arrest in the vicinity of 624 Amos Arrington Road in Clyde, North Carolina on March 26, 2020 during the course of the investigation;

i.     $7,226 in United States currency seized from **1) REBECCA LYNN BARKER's** residence at 61 Buena Vista Lane in Clyde, North Carolina on March 26, 2020 during the course of the investigation;

j.     a Braztech, Model 5411220, .410 gauge shotgun seized from **1) REBECCA LYNN BARKER's** residence at 61 Buena Vista Lane in Clyde, North Carolina on March 26, 2020 during the course of the investigation'

k.     $171 in United States currency seized from **7) DAVID HUNTER CRESON** incident to his arrest on Interstate 40 in Canton, North Carolina on April 13, 2020 during the course of the investigation;

l.     $488 in United States currency seized from **20) CHRISTY HELEN TRULL** incident to her arrest on Wiggins Road in Candler, North Carolina on April 17, 2020 during the course of the investigation;

m.     $201.26 in United States currency seized incident to the arrest of **9) ARTHUR SHANE DOUVILLE** on Highway 23/74 in Waynesville, North Carolina on May 7, 2020 during the course of the investigation;

n.     a Hi Point, Model C9, 9mm semi-automatic pistol seized from **18) RYAN WARREN MUSTER's** residence at 281 Dark Ridge Road in Sylva, North Carolina on May 15, 2020 during the course of the investigation;

o.     a Lorcin, Model L25, .25 cal. semi-automatic pistol; 6 rounds of GFI .25 cal. ammunition and 2 rounds of CCI .25 cal. ammunition seized from **16) JOSE ANDRES MARTINEZ a/k/a "Andy"** during a vehicle stop on Return Road in Waynesville, North Carolina on August 12, 2020 during the course of the investigation;

p.     $328 in United States currency seized incident to the arrest of **15) ELIZABETH GABRIELLE MANN a/k/a "Gabby"** during a vehicle stop on Dellwood Road in Waynesville, North Carolina on November 10, 2020 during the course of the investigation;

q.     $867 in United States currency seized incident to the arrest of **20) CHRISTY HELEN TRULL** during a vehicle stop on Champion Drive in Canton, North Carolina on November 19, 2020 during the course of the investigation;

20

IA 026

r.      a Bersa, Model Thunder 380, .380 cal. semi-automatic pistol and 1round of Hornady .380 cal. ammunition seized from **16) JOSE ANDRES MARTINEZ a/k/a "Andy"** during a traffic stop on Champion Drive in Canton, North Carolina on November 19, 2020 during the course of the investigation;

s.      a Ruger, Model P89DC, 9mm semi-automatic pistol; 5 rounds of Winchester 9mm ammunition; and 9 rounds of Blazer 9mm ammunition seized after it was abandoned by **17) NICHOLAS RAY MILLER** during a foot chase in the vicinity of 105 Wills Cove Road in Clyde, North Carolina on December 5, 2020 during the course of the investigation; and

t.      5 rounds of Winchester 9mm ammunition; 1 round of Maxxtech 9mm ammunition; and 1 round of CBC .45 cal. ammunition seized from **17) NICHOLAS RAY MILLER's** and **20) CHRISTY HELEN TRULL's** residence at 132 Edgar Lane in Canton, North Carolina on December 7, 2020 during the course of the investigation.

A TRUE BILL:

Redacted

—————————————
FOREPERSON

WILLIAM T. STETZER
ACTING UNITED STATES ATTORNEY

—————————————
THOMAS KENT
ASSISTANT UNITED STATES ATTORNEY

21

AO 472 (Rev. 9/16) Order of Detention Pending Trial

FILED
ASHEVILLE, N.C.

# UNITED STATES DISTRICT COURT
### for the
### Western District of North Carolina

AUG 18 2021

U.S. DISTRICT COURT
W. DIST. OF N.C.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | |
| | ) | Case No. 1:21–cr–00070–MR–WCM |
| Jane Ivison Gill | ) | |
| *Defendant* | ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I – Eligibility for Detention

Upon the

☑ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
☐ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This Order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II – Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

☐ (1) the Defendant is charged with with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801–904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951–971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501–70508); **or**

☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

☐ **(e)** any felony that is not otherwise a crime of violence but involves:
**(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921);
**(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; *and*

☐ (2) the Defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; *and*

☐ (3) the offense described in paragraph (2) above for which the Defendant has been convicted was committed while the Defendant was on release pending trial for a Federal, State, or local offense; *and*

☐ (4) a period of not more than 5 years has elapsed since the date of conviction, or the release of the Defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

1A 028

AO 472 (Rev. 9/16) Order of Detention Pending Trial

☐ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant as required and the safety of the community because there is probable cause to believe that the Defendant committed one or more of the following offenses:

☑ (1) an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801−904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951−971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501−70508);

☐ (2) an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ (3) an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

☐ (4) an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581−1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☐ (5) an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☑ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

☑ the Defendant has not introduced sufficient evidence to rebut the presumption above.

**OR**

☐ the Defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

☐ **D. The Defendant Has Failed to Carry Defendant's Burden Under Rule 32.1(a)(6)**

☐ the Defendant was arrested for violating probation or supervised release. Under Rule 32.1 and 18 U.S.C. § 3143(a)(1), the Defendant has not shown by clear and convincing evidence that the Defendant will not flee or pose a danger to any other person or to the community.

### Part III − Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the Defendant must be detained pending trial because the Government has proven:

☑ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☑ By a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the Defendant's appearance as required.

1A 029

AO 472 (Rev. 9/16) Order of Detention Pending Trial

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

- ☑ Weight of evidence against the Defendant is strong
- ☑ Subject to lengthy period of incarceration if convicted
- ☐ Prior criminal history
- ☐ Participation in criminal activity while on probation, parole, or supervision
- ☐ History of violence or use of weapons
- ☑ History of alcohol or substance abuse
- ☐ Lack of stable employment
- ☐ Lack of stable residence
- ☐ Lack of financially responsible sureties
- ☐ Lack of significant community or family ties to this District
- ☐ Significant family or other ties outside the United States
- ☐ Lack of legal status in the United States
- ☐ Subject to removal or deportation after serving any period of incarceration
- ☐ Prior failure to appear in court as ordered
- ☑ Prior attempt(s) to evade law enforcement — *including escape attempt*
- ☐ Use of alias(es) or false documents
- ☐ Background information unknown or unverified
- ☐ Prior violations of probation, parole, or supervised release
- ☐ Defendant waived detention hearing and the Court granted an indefinite continuance of the hearing for cause.
- ☐ Addendum containing findings will be filed later.

## ADDITIONAL REASONS

*As stated on The record*

☐ The Defendant consents to detention.

### Part IV – Directions Regarding Detention

The Defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

---
August 18, 2021
Date

*W. Carleton Metcalf*

W. Carleton Metcalf
United States Magistrate Judge

1                  UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF NORTH CAROLINA

2                   (Asheville Division)

3

4  ---------------------------x
  UNITED STATES OF AMERICA,  :

5         Plaintiff,    :
                      :

6                      :
  vs                    :Criminal Action:1:21-CR-70-12

7                      :
                      :

8  JANE IVISON GILL,     :
          Defendant.   :

9  ---------------------------x

10

11                      August 18, 2021
                      Asheville, North Carolina

12

13

14      The above-entitled action came on for an
  Arraignment Hearing and a Detention Hearing Proceeding

15  before the HONORABLE W. CARLETON METCALF, United States
  Magistrate Judge, in Courtroom 2, commencing at 9:52 a.m.

16

17
        **APPEARANCES**:

18        On behalf of the Plaintiff:
        **THOMAS M. KENT, Esquire**

19        Office of the U.S. Attorney - WDNC
        233 U. S. Courthouse Building

20        100 Otis Street
        Asheville, North Carolina  28801

21
        On behalf of the Defendant:

22        **HOWARD W. ANDERSON, III, Esquire**
        Law Office of Howard W. Anderson, III, LLC

23        176 East Main Street
        Pendleton, South Carolina  29670

24
  Tracy Rae Dunlap, RMR, CRR           828.771.7217

25  Official Court Reporter

**I N D E X**

<u>**DIRECT**</u>   <u>**CROSS**</u>

Brian Leopard...........8.......16

                                                          <u>Page</u>
Reporter's Certificate.......................38

**P R O C E E D I N G S**

1     THE COURT:  The Court will call the case of United

2    States versus Jane Ivison Gill, case 1:21-CR-70.  This

3    matter is before me for arraignment and detention

4    hearings this morning.

5     Ms. Gill, I am now going to conduct your

6    arraignment.  If you would -- are you able to stand up

7    all right?

8     THE DEFENDANT:  Yes, sir.

9     THE COURT:  All right.  If you would, stand up.

10     A Bill of Indictment has been filed against you.

11    As you may recall, previously, I advised you that that

12    Bill of Indictment was filed on August the 3rd 2021, as

13    document 3 in your case.  It does contain 38 counts;

14    however, not all of those counts pertain to you.

15     Has the defendant received a copy of the Bill of

16    Indictment.

17     MR. ANDERSON:  Yes, Your Honor.

18     THE COURT:  All right.  The law requires, Ms.

19    Gill, at this time I either read the charges to you or

20    advise you of the substance of those charges.  I am now

21    going to advise you of the substance of those charges.

22     From my review of the indictment, it appears that

23    counts One, 22 and 24 applies to you.

24     Continue One charges you conspiring with others to

distribute and possess with the intent to distribute 50

grams or more of actual methamphetamine and 500 grams or

more of a mixture or substance on containing a detectable

amount of methamphetamine.

Count One describes the conspiracy as alleging

from in or around April of 2019, and continuing until on

or about May the 21st 2021 in Haywood, Jackson, and

Buncombe Counties, which are within the Western District

of North Carolina and elsewhere.  There are 23 defendants

named with regard to Count One.

Count 22 alleges that you have knowingly and

intentionally possessed with the intent to distribute 50

grams or more of actual methamphetamine.

And, finally, Count 24 alleges that you have aided

and abetted others and intentionally possessed with the

intent to distribute 50 grams or more of actual

methamphetamine.

With regard to Count 22.  It's alleged that that

occurred on or about March 26th 2020, in Haywood County.

And Count 24 is alleged -- the conduct is alleged,

also, to have occurred on or about March 26th 2020, in

Haywood County.

All right.  You are presumed innocent of these

charges.  However, as I indicated at your initial

appearance, you are maybe -- you will be facing certain

1    penalties if you were to be convicted.

2          I went over those potential penalties with her at

3    her initial appearance.  Mr.  Anderson, have you had a

4    chance to go over the charges and the penalties with her.

5          MR.  ANDERSON:  Judge, I don't know that we have

6    discussed the penalties but I'm happy to do so after

7    here.  But I don't think that in our -- I don't think in

8    our meeting yesterday we actually talked about the

9    penalties.

10          THE COURT:  I'm glad to go over those with her at

11    this time.

12          MR.  ANDERSON:  I thank you.

13          THE COURT:  With regard to each of these counts,

14    Ms. Gill -- that would be counts One, 22 and 24 -- the

15    maximum possible penalty for each of these counts would

16    be a term of imprisonment of not less than ten years and

17    not more than life, a fine of up to $10 million, or both,

18    not less than five years of supervised release, and a

19    $100 special assessment.  However, if you have a prior

20    serious drug offense or a serious violent felony in your

21    background, the maximum possible penalty would be not

22    less than 15 years and not more than life, a fine of up

23    to $20 million, or both, not less than ten years of

24    supervised release, and the $100 special assessment.

25          Now how does she plead with regard to these

1  charges?

2       MR. ANDERSON:  Not guilty.  And requests a trial

3  by jury, Judge.

4       THE COURT:  Thank you.

5       The record will reflect that the defendant has

6  entered a plea of not guilty and has requested a jury

7  trial as to each and every count now pending against her

8  in the Bill of Indictment.

9       There are two pretrial orders, Ms. Gill, that will

10 be entered in your case.  They are standard in this

11 district.  One is called the Standing Arraignment Order,

12 and the other is called the Standing Criminal Discovery

13 Order.  They will apply to your matter and will govern

14 this case between now and the time of trial.

15      In addition, pursuant to the Due Process

16 Protection Act, and the Court confirms the government's

17 obligation under *Brady versus Maryland*, and orders such

18 compliance.  Failure to comply may result in appropriate

19 sanctions.

20      A written Order will issue to that effect as well.

21      Madam Clerk, when will trial be scheduled?

22      THE CLERK:  Judge, that would be September 7th

23 2021.

24      THE COURT:  September 7th 2021.  Now that is less

25 than 30 days from today.  So unless you would consent in

1    writing to be tried at that time we would need to set it

2    to another date.

3         Madam Clerk what is that next term?

4         THE CLERK:  Judge, that would be November 8th

5    2021.

6         THE COURT:  What is her position in that,

7    Mr. Anderson?

8         MR. ANDERSON:  Judge, I think we're going to need

9    some time to read the discovery.

10        THE COURT:  All right.  Then pursuant to *18, U.S.*

11    *Code, Section 3161*, I will set her trial for the

12    11/8/2021 term.

13        All right.  Ms. Gill, you may sit down.

14        That will address the issue of arraignment.

15        Now let me turn to the issue of detention.

16        Is the government ready to proceed, Mr. Kent?

17        MR. KENT:  Yes, Your Honor.

18        THE COURT:  Is the defense ready to proceed?

19        MR. ANDERSON:  We are, Your Honor.

20        THE COURT:  Then I'll hear evidence from the

21    government.

22        MR. KENT:  Thank you, Your Honor.  I would first

23    note that there is a presumption and failure of detention

24    pursuant to 18, U.S. Code, 3142(e)(3)(A).

25        I'd like to introduce the Pretrial Services

**LEOPARD - DIRECT**

1  report, which is document 49 in this case, into evidence

2  as Government's Exhibit 1, as it contains the background

3  and criminal history of Ms. Gill, Your Honor.

4        THE COURT:  All right.  Any objection?

5        MR.  ANDERSON:  No objection, Judge.

6        THE COURT:  Let it be admitted.

7        MR. KENT:  Thank you, Your Honor.  I would also

8  call Task Force Officer Brian Leopard of the DEA to

9  testify.

10       THE COURT:  Officer, if you would please come

11 around to be sworn.

12         (Witness duly sworn at 9:57 a.m.)

13       THE COURT:  The government may proceed.

14       MR. KENT:  Thank you, Your Honor.

15                **DIRECT EXAMINATION**

16       BY MR.  KENT:

17 Q.    If you would please state your full name, spelling

18 your last name.

19 A.    It's Brian Anthony Leopard.  It's L E O P A R D.

20 Q.    And can you tell us who it is you work for, sir?

21 A.    I work for the Swain County Sheriff's Office

22 assigned to the Drug Enforcement Administration as a

23 full-time task force officer.

24 Q.    And are you one of the main case officers in the

25 investigation that led to this 23-defendant indictment?

**LEOPARD - DIRECT**

1  A.      Yes, I am.

2  Q.      Is Ms. Jane Gill one of the defendants in the

3  case?

4  A.      Yes, she is.

5  Q.      And do you see her in the courtroom today?

6  A.      Yes, I do.

7  Q.      Can you tell us where she's located and what she's

8  wearing?

9  A.      To the left of the courtroom.  A pink shirt.  I

10 think it says "lake girl" on the front of it.  She's got

11 a mask and neck brace on.

12 Q.      May the record reflect the witness has identified

13 the defendant, Ms. Gill, Your Honor?

14 A.      So.

15         THE COURT:  So noted.

16         BY MR. KENT:

17 Q.      Your investigation -- I'll try to focus on

18 Ms. Gill.  Was this a multi-agency investigation using a

19 variety of different techniques, such as seizures and

20 search warrants and debriefs of traffickers?

21 A.      Yes, it was.

22 Q.      And did the folks that were indicted, did they

23 include several sources of supply here in North Carolina?

24 A.      Yes.

25 Q.      And was Ms. Jane Gill one of those sources of

**LEOPARD - DIRECT**

1  supply?

2  A.     Yes, she was.

3  Q.     Looking at, sort of, the first substantive count

4  where she's indicted outside the conspiracy.  Did you-all

5  receive information in March of 2020 that she was headed

6  to Ms. Barker's residence with a shipment of

7  methamphetamine from Georgia?

8  A.     Yes, we did.

9  Q.     And did folks attempt -- did investigators attempt

10 to set up in the area so they could see if they could

11 intercept her?

12 A.     Yes.

13 Q.     Were they able to intercept her before she got to

14 Ms. Barker's residence?

15 A.     No, we were not.

16 Q.     Were they able to intercept her after she left

17 Ms. Barker's residence?

18 A.     Yes.

19 Q.     If you would, tell us about when she was stopped

20 later that day leaving that residence in possession of

21 more than two ounces of meth and more than $2,000 in

22 cash.

23 A.     She -- like I said, she was -- she left

24 Ms. Barker's residence.  Deputies from the sheriff's

25 office of Haywood County observed it.  They got in behind

**LEOPARD - DIRECT**

1   her.  She was accelerating to a high rate of speed.  They

2   attempted to do a traffic stop on her.  A pursuit ensued

3   at high speeds.  She was driving very erratically, wrong

4   side of the road on two-lane roads, curvy road.  She

5   ended up in a dead end road.

6        When she came to the dead end she jumped out of

7   the vehicle and started fleeing on foot.  A deputy

8   observed her throw some items as she was fleeing.  Once

9   the deputy caught her, he was able to take her to the

10  ground.  She continued to resist, fight.

11       While she was trying to be -- attempting to be

12  restrain, and eventually the deputy couldn't see one of

13  her hands.  It led to the point of him having to draw his

14  weapon and giving her commands.  She still didn't comply.

15  But then he was able to see her hand.  He reholstered,

16  then took control of her again and, eventually, had to

17  physically drag her back down to his vehicle to be able

18  to get her restrained.

19       After she was restrained, handcuffed, he retrieved

20  what he saw her throw.  It was a bag that contained over

21  an ounce of crystal meth.

22  Q.    And did that bag have a distinct hand drawn pink

23  smiley face on it?

24  A.    Yes, it did.

25  Q.    When you mentioned before once they attempted to

**LEOPARD - DIRECT**

1  initiate the stop on her, you mentioned that she was

2  driving at a high rate of speed.  Was she going

3  approximately 80 miles an hour?

4  A.    Yes.

5  Q.    And eventually, later that day, was Ms. Barker's

6  residence then searched, and did investigators recover

7  more than six ounces of meth, more than $7,000 in cash,

8  as well as a shotgun?

9  A.    Yes.

10  Q.    And was that pursuant to a search warrant?

11  A.    Yes, it was.

12  Q.    And did they recover any drug paraphernalia from

13  the residence?

14  A.    Yes, they did.

15  Q.    And what kind of drug paraphernalia?

16  A.    I believe there was the baggies and scales.

17  Q.    Was there also a can that had a false bottom on

18  it?

19  A.    Yes.  I'm sorry.

20  Q.    Was that a can of soup?

21  A.    Yes.

22  Q.    Was some of the meth in that false can?

23  A.    Yes, it was.

24  Q.    And was the majority of the other meth with the

25  scales inside a safe in the closet where the shotgun also

**LEOPARD - DIRECT**

1  was?

2  A.    Yes.

3  Q.    And did one of those bags contain a similar pink

4  smiley face as was drawn on the bag recovered that

5  Ms. Gill threw?

6  A.    Yes, it was.

7  Q.    Did you-all -- based on this information and the

8  evidence recovered that Ms. Gill was delivering a

9  shipment of meth from Georgia to Ms. Barker, did you-all

10 begin looking at Ms. Barker's financial transactions on

11 Cash App to see if there were other times where she was

12 sending money to Ms. Gill?

13 A.    Yes, we did.

14 Q.    And did you find more than 20 such transactions

15 between July of 2019 and March of 2020?

16 A.    Yes, we did.

17 Q.    And did they account for more than $23,000 in

18 cash?

19 A.    Yes, it did.

20 Q.    And using the prices you learned that they were

21 paying, from the investigation, was that commensurate

22 with more than 57 ounces of methamphetamine?

23 A.    Yes.

24 Q.    Now did some of the traffickers -- we'll call them

25 co-defendants at this point.  Did they, also, during the

### LEOPARD - DIRECT

1   course of the investigation tell on Ms. Gill?

2   A.      Yes.

3   Q.      And was one of those folks co-defendant Creson?

4   A.      Yes.

5   Q.      And did he admit to using her as a source of

6   supply?

7   A.      Yes, he did.

8   Q.      And do you recall any of the quantities that he

9   said he was getting from her?

10  A.      Multiple ounces.  Multiple times.

11  Q.      Okay.  And did he say the last time he got from

12  her was the day that she got chased and stopped by the

13  police?

14  A.      Yes.

15  Q.      And did he state that he had received a pound from

16  her that day?

17  A.      Yes.

18  Q.      Did Ms. Trull, who is also a codefendant, identify

19  Ms. Jane Gill as a source of supply?

20  A.      Yes.

21  Q.      Did she explain that she was present during that

22  one pound delivery to Mr.  Creson?

23  A.      Yes, she did.

24  Q.      And did Mr.- -- I know everyone says his name

25  differently.  But did Mr.  Swanger also tell on Ms. Gill?

LEOPARD - DIRECT

1  A.      Yes.

2  Q.      And did he explain that, in addition to using

3  Ms. Barker as a source of supply, he was also using

4  Ms. Gill as a source of supply?

5  A.      Yes.

6  Q.      And did he estimate over a significant amount of

7  time that it was approximately 168 grams once you added

8  up all the quarter or half ounces?

9  A.      Yes.

10  Q.      Now I wanted to talk about something that's not in

11  the pretrial report.  Specifically, I think the charge is

12  listed but just the circumstances of it.

13          Did the defendant attempt to escape from the

14  Haywood County detention facility in April of 2020?

15  A.      Yes, she did.

16  Q.      And was she in custody at that time from her March

17  of 2020 arrest, which was the state version of this case?

18  A.      Yes, she was.

19  Q.      And what happened on that day?

20  A.      She was in one of the holding cells at the Haywood

21  County detention center.  There was a ceiling tile that

22  was popped out, and she was caught trying to climb up

23  through the ceiling.

24  Q.      I have no further questions, Your Honor.

25          THE COURT:  Cross-examination.

LEOPARD - CROSS

1          MR. ANDERSON:  Thank you, Judge.

2                    **CROSS-EXAMINATION**

3          BY MR. ANDERSON:

4    Q.    Agent Leopard, you said that you're one of the

5    case agents on this case.

6    A.    Yes, sir.

7    Q.    And about how long was your-all's investigation?

8    A.    I think we started it around the first part of

9    2019.

10   Q.    All right.  As part of your investigation, did

11   you-all seek any wiretaps?

12   A.    We did not, no.

13   Q.    Did you -- did you-all seek any search warrants?

14   A.    Multiple search warrants through different stuff,

15   yes.

16   Q.    Did you yourself seek any search warrants?

17   A.    I did not, no.

18   Q.    Okay.  Did you seek any arrest warrants?

19   A.    Yes.

20   Q.    Okay.  And whom did you seek an arrest warrant

21   for?

22   A.    I went to a federal grand jury on the first 23 on

23   the indictment.

24   Q.    Okay.  So you testified at the grand jury about

25   Ms. Gill; is that right?

LEOPARD - CROSS

1  A.      Yes.

2  Q.      Okay.  Judge, at this time, under 26.2, I would

3  ask the government to produce the grand jury testimony.

4  And if the government doesn't have the grand jury

5  testimony I would move to strike the witness' testimony

6  as required under 26.2.

7          THE COURT:  Mr. Kent.

8          MR. KENT:  Your Honor, the grand jury testimony's

9  not even transcribed.  We just recently indicted the

10 case.  We traditionally request that, obviously, in the

11 run-up to any trial or any other proceeding in which

12 there is going to be any contentious issues.  I don't

13 have it.  It's not even transcribed at this point, Your

14 Honor.  It's not traditionally produced at this early

15 stage of the case.

16         THE COURT:  Mr. Anderson, do you have any

17 authorities that would indicate it's got to be produced

18 in connection with the detention hearing?

19         MR. ANDERSON:  26.2 is sort of the rule

20 equivalent of the Jenks Act, Judge.  It's also --

21         THE COURT:  Mr. Anderson, if you're going to

22 argue you're going to need to stand up.

23         MR. ANDERSON:  Sorry, Judge.  26.2 is the rule

24 version of the Jenks Act.  But I will say that there is

25 authority under the Jenks Act that if the transcript is

**LEOPARD - CROSS**

1  not yet prepared then, there's nothing to produce, then I

2  would accept Mr. Kent's representation of that.

3          So I'll continue on but we're going to come back

4  to this issue in just one second, I believe, Judge.

5          THE COURT:  I'll deny the motion without prejudice

6  at this point.  Go ahead.

7          MR.  ANDERSON:  Thank you.

8                 **FURTHER CROSS-EXAMINATION**

9          BY MR.  ANDERSON:

10  Q.     Agent Leopard, did you prepare any DEA-6s in this

11  case?

12  A.     Yes, I have.

13  Q.     And do those DEA-6s relate to Ms. Gill?

14  A.     I believe so, yes.

15  Q.     All right.  Judge, at this time I'll renew my

16  motion now for the DEA-6s which are written statements

17  prepared by the witness.  So I would ask that they either

18  be produced or his testimony be stricken as required

19  under 26.2.

20          THE COURT:  Mr.  Kent.

21          MR. KENT:  Your Honor, we do not traditionally

22  produce that discovery at this early stage.  I understand

23  what they're asking for.  It's downstairs.  It is

24  voluminous.  It's already been copied.  It's on multiple

25  discs.  Thousands and thousands of pages of discovery.

LEOPARD - CROSS

1    It also has 51 discs attached to it of various recordings

2    and interviews, things of that sort.  So we're amassing

3    all that to keep in line with our production

4    responsibilities.

5         Once the defendant is arraigned it's all going to

6    be turned over.  But I would have requested that this

7    request be made earlier so that we could have gotten

8    through it and parsed through it.  There's no way for me

9    to do that from up here.  There's no way for me to do

10   that in a timely fashion.  It would probably take a

11   couple of hours, at this point, for me to go down and do

12   that at this point.

13        THE COURT:  So there's not been a request is what

14   you're telling me.  To this point, this is the first time

15   the government's heard of this request for discovery.

16        MR. KENT:  Yes.

17        THE COURT:  And it would typically, then, if I'm

18   understanding it correctly, then be produced following

19   today's proceedings.  Of course, she's just been

20   arraigned a few moments ago.

21        MR. KENT:  Correct, Your Honor.

22        THE COURT:  Mr. Anderson, do you have any

23   specific authority that would indicate in this type of a

24   circumstance that the defendant's motion should be

25   granted, and even the DEA-6 information should be

LEOPARD - CROSS

1  produced, or the witness' testimony stricken?

2      MR.  ANDERSON:  Yes, Judge.  Under 26.2, I'm only

3  entitled to it after the witness has testified.  Those

4  DEA-6s are in fact Jenks Act material.  So I wouldn't be

5  allowed to have them until the Court entered the Order

6  authorizing the Jenks Act material.

7      I do acknowledge the practice in this district of

8  not providing those here at a detention hearing.  But if

9  the government is going to ask for detention, 26.2 says

10 they're supposed to have the statements here so that I

11 can review them.  And, so, Judge, I would say I am

12 cognizant of the practice in this district, but 26.2 says

13 I'm entitled to them after the witness has testified.

14 The witness has testified.  I think I'm entitled to them

15 so I can cross-examine him.

16      THE COURT:  All right.  My specific question has

17 two parts.  One, cite me to a specific subsection of 26.2

18 and, also, cite me case law interpreting 26.2 to give you

19 the relief that you're asking for.

20      MR.  ANDERSON:  26.2(a), Your Honor.

21      THE COURT:  And do you have any specific case law

22 interpreting that in this context?

23      MR.  ANDERSON:  Judge, I do not off the top of my

24 head have any case law about 26.2(a).  So I would just

25 rely on the plain text of the rule, Judge.

LEOPARD - CROSS

1      THE COURT:  All right.  Give me a moment.

2      Mr.  Kent, do you want to be heard on that any

3  further?  I'm looking at 26.2(a).

4      MR.  KENT:  Your Honor, I understand the rule.

5  But, again, in a large defendant case, what we typically

6  expect is it's going to be an issue, and (inaudible) is

7  going to be an issue, and they make that request to us in

8  advance so we can get that, as opposed to surprising us

9  here and then now asking to exclude this testimony

10 because the government hasn't brought this large,

11 voluminous discovery with them.

12     Typically, what we would do is just hand them a

13 box of discovery.  We're not required to go through it.

14 We just turn it over.  It is copied downstairs.  But

15 there has to be 23 copies made of all that stuff, which

16 there are two people working on currently to get that all

17 done to make sure it goes out as early as possible.  But

18 I can't, under these circumstances, have it here.

19     THE COURT:  26.2(a) pertains to any statement of

20 the witness that is in government's possession, and it

21 relates to the subject matter of the witness' testimony.

22     Would all of that information that you're talking

23 about be covered by 26.2(a)?

24     MR. KENT:  We tend to take a very broad reading of

25 it.  I know in the context of a witness testifying it's

### LEOPARD - CROSS

1  just his statements.  So of that voluminous discovery

2  he's probably the author of a few documents.  I cannot

3  say off the top of my head he's the author of any

4  documents related to Ms. Gill, because those -- in her

5  case, those are generally Haywood County sheriff's

6  officers that were interacting with her and chasing that

7  day.  I don't believe Officer Leopard was involved in the

8  chase or anything of that sort.  So I don't believe he

9  has authored the reports.  He certainly has, during the

10  course of the investigation but, again, I would need time

11  to go through that.

12       THE COURT:  Well I'm looking at 26.2(a), which is

13  what Mr.  Anderson has cited.  It says after a witness

14  other than the defendant has testified on direct

15  examination, the Court, on motion of the party, who did

16  not call the witness, must order an attorney for the

17  government or the defendant and the defendant's attorney

18  to produce for examination and use of the moving party

19  any statement of the witness that is in their position --

20  excuse me -- that is in their possession and that relates

21  to the subject matter of the witness' testimony.

22       Several questions there it would seem like as to

23  whether all of the discovery in the file would be covered

24  by Rule 26.2(a), or whether it would just be any

25  statement of the witness, that is Detective Leopard, that

LEOPARD - CROSS

1    is in the possession of the government.

2         It's also -- I don't know that I've seen this come

3    up before at this stage, and I'm not seeing any authority

4    that the defendant has provided.

5         Do you have any case law on that point as well?

6         MR. KENT:  No, Your Honor, I do not.  Again, I

7    agree it would only apply to the reports he wrote about

8    the testimony that he's giving today.  I'm sure that

9    statute has been interpreted.  And that's why we, in this

10   district, turn stuff over.  We make sure we have all the

11   discovery before we get to this stage.  It's being copied

12   so it goes out as quickly as possible.

13        But, again, the main issue -- the thing I take

14   issue with at that point is this is the first time on

15   cross that a request is being made.  I just don't have

16   time to go through and parse through it at this point,

17   Your Honor.

18        THE COURT:  Does 26.2 apply to a detention

19   hearing?

20        MR. KENT:  I believe so, Your Honor.

21        THE COURT:  All right.  So if I'm understanding

22   the government's position, the government says 26.2 does

23   apply.  There's been no notice of this request until this

24   very moment.  And just, as a practical matter, that

25   information is not ready to be turned over.

24

LEOPARD - CROSS

1      MR. KENT:  Correct, Your Honor.  I mean we could

2  suspend everything here and I could take both officers

3  up, and while these hearings are pending.  But it would

4  take that much for all of us to go up there and go

5  through this because that stuff has already been copied

6  on to disc.

7      THE COURT:  Okay.  Mr. Anderson, anything further

8  you want to say about any of this?

9      MR.  ANDERSON:  No, Your Honor.

10      THE COURT:  Do you agree that -- well what is your

11  position about the breadth of 26.2 in this context?  It

12  sound like to me the government is getting ready to

13  produce its entire discovery file to you-all now that

14  arraignment has taken place.  Does 26.2 pertain to the

15  entire file or just the officer's testimony?

16      MR.  ANDERSON:  Judge, statement is a term of art

17  under the Jenks Act under 26.2.  So it would only include

18  grand jury testimony.  It would include affidavits that

19  he's prepared.  It would include reports that he's

20  prepared.  And on direct -- excuse me.  On cross he

21  agreed that he has prepared DEA-6s about Ms. Gill.  So

22  it's going to be items that he has sort of authenticated

23  and adopted.  So it's generally those three items.

24      If he's got any handwritten statements, those

25  could be it.  But it's not the contents of wiretap

**LEOPARD - CROSS**

1   recordings.  It's not physical evidence.  It's literally

2   just statements which is a term of art.

3        THE COURT:  I'm not inclined to strike his

4   testimony or disregard his testimony.  At the same time,

5   I see Rule 26.2 and I want to recognize that.  So what I

6   am inclined to do is to allow him to proceed with his

7   testimony, hold the matter open -- and that may take some

8   time, and I don't know if we can finish it today -- in

9   order for the government to produce whatever material may

10  be required under 26.2 to give you the opportunity,

11  Mr.  Anderson, to look at that and then proceed with the

12  rest of the detention hearing.

13       That would be what I will be inclined to do.  I

14  think this's a fair position.  Now what that means, of

15  course, is we may not be able to finish the detention

16  hearing for Ms. Gill today.  You understand that.

17  Correct, Mr.  Anderson?

18       MR.  ANDERSON:  Judge, I think what I would rather

19  do is to proceed, because I hope that you're going to

20  grant her a bond and it's all going to become moot at the

21  end of the day anyway.  But then just to come back by way

22  of motion for reconsideration in three or four days,

23  rather than holding it open, so that we can have a

24  decision today.  Because I think she is candidate for

25  bond.  The Pretrial Services report has recommended she

LEOPARD - CROSS

1   get a bond.

2       So, rather than continuing it over and having her

3   spend another night in the jail so all this could be

4   prepared, I would propose -- I would not object to doing

5   it that way, Judge, for the purposes -- of you having

6   ruled against me rather than asking for a continuance.  I

7   would rather have the hearing proceed subject to my right

8   to move to reconsider if and when the discovery is

9   produced.

10      THE COURT:  I see.  All right.  So let me make

11  sure I've got it right then.

12      So you would not object to the Court ruling

13  whichever way the Court is going to rule today.  We don't

14  know yet, of course; I haven't heard the evidence yet or

15  the argument.  Depending on what happens then, after the

16  evidence is produced to the -- the discovery is produced

17  by the government to the defense, if necessary, then you

18  could move for reopening of the detention hearing.  Is

19  that what you're saying?

20      MR.  ANDERSON:  Yes, Judge.  If you're not going

21  to strike the -- given that you've overruled my objection

22  to strike the testimony, yes, my preference would be to

23  have the decision today, subject to my right to come back

24  after the discovery is produced.

25      THE COURT:  All right.  Mr.  Kent any further word

**LEOPARD - CROSS**

1  on that from the government?

2      MR. KENT:  No, sir.

3      THE COURT:  I think that makes sense then.  That's

4  acceptable to me as well.

5      So I will overrule the objection to the

6  detective's testimony.  And I will proceed now, and I

7  will deal with any motion to reopen the hearing, if

8  necessary, at a later date.

9      MR.  ANDERSON:  I thank you, Judge.

10     THE COURT:  Thank you.

11                    **FURTHER CROSS-EXAMINATION**

12     BY MR.  ANDERSON:

13 Q.     All right.  Detective, I think you said that

14 Ms. Gill was arrested on the state version of these

15 charges; is that correct?

16 A.     That's correct.

17 Q.     Okay.  And, at some point, she was able to get a

18 bond on those state charges; is that correct?

19 A.     That's correct.

20 Q.     Okay.  So she got a bond even after this alleged

21 escape attempt; is that right?

22 A.     It was quite a while after, but yes.

23 Q.     Okay.  But the state court was aware of that

24 charge you would imagine?

25 A.     I would imagine so.

LEOPARD - CROSS

1  Q.    Okay.  And as far as you know she has complied

2  with her bond since she got out; is that right?

3  A.    As far as I know.  I've not heard anything.

4  Q.    As far as you know, she hasn't engaged in any

5  criminal activity since she's been out on bond; is that

6  right?

7  A.    Nothing I have proof of.

8  Q.    All right.  And you're aware that she's got some

9  -- some medical issues?

10 A.    I see that today, yes.

11 Q.    Yes.

12       Judge, I would have no further questions of the

13 witness.  Thank you.

14       MR. KENT:  No further questions, Your Honor.

15       THE COURT:  Thank you, Detective.  You may step

16 down.

17            (Witness excused at 10:20 a.m.)

18       THE COURT:  Further evidence by the government.

19       MR. KENT:  No further evidence, Your Honor.

20       THE COURT:  All right.  Evidence by the defense.

21       MR.  ANDERSON:  Judge, no evidence.

22       I would just proffer Ms. Gill is here.  Obviously,

23 she has a presumption of innocence so we don't want to

24 talk about the charges.  But I would say that she is

25 prepared to comply with the conditions that probation has

1 proposed.  She does live in South Carolina.  I would also

2 note that my main office is in South Carolina.  So, in

3 some ways, it would be more convenient for me to meet

4 with her in South Carolina than here in the jail.

5      She is willing to do whatever it takes to get a

6 bond.  If Your Honor wants to put her on a GPS monitor,

7 she's willing to do that.  But she is -- she's committed

8 to me that she's going to attend all the court hearings,

9 and she is going to be on her best behavior out on bond.

10 And, so, that would be her proffer and then have

11 argument, Judge.

12      THE COURT:  When did her motor vehicle accident

13 occur?

14      MR.  ANDERSON:  August 1st, Judge.

15      THE COURT:  Of this year?

16      MR.  ANDERSON:  Yes, Your Honor.

17      THE COURT:  All right.  Then I'll hear argument

18 from the government.  Mr.  Kent.

19      MR. KENT:  Thank you, Your Honor.

20      Your Honor, I'd ask that you detain the defendant.

21 I do not believe the defendant has rebutted the

22 presumption of failure of detention.  I just respectfully

23 disagree with the assessment -- in the Pretrial Services

24 report, I think, understandably, they were not

25 necessarily aware of some facts that cannot be gleaned

from the indictment or even the report that we've
introduced today.

I believe the defendant is a danger to the
community. Amongst the 23 defendants in the indictment
she was one of the meth source of supplies in North
Carolina. Meaning she occupied a position significantly
above many of the codefendants. Her role within the
conspiracy is demonstrated by a number of facts.

It's a strong case. We have her coming into town
from Georgia with a supply of methamphetamine. We saw
her leaving the intended residence for that
methamphetamine. She was caught with (inaudible) two
ounces of meth. The bag that she threw matched an
additional bag of meth that was recovered from inside the
residence she was supposed to be delivering that meth to,
which was more than six ounces.

She had significant cash or significant cash.
There was significant cash in the residence. She also --
we also found financial transactions between her and
Ms. Barker of more than $23,000. Given the pricing at
that time that's representative of more than 57 ounces of
methamphetamine.

She was also identified as a significant source of
meth by several codefendants Creson, Trull and Swanger.

The defendant is a risk of flight. An

1  investigator attempted to pull her over, as you heard,

2  after observing her driving recklessly and while

3  transporting the meth.  She would not stop.  She

4  attempted to flee, accelerating to 80 miles an hour, and

5  she became involved in a police chase.  She only stopped

6  in her vehicle when she got out to run, while attempting

7  to discard evidence, and then fought with the

8  investigator who caught up with her.

9         Then I would submit, based on testimony, and

10  looking at the Pretrial Services report, it was her

11  attempt to escape from the Haywood County detention

12  center while in custody on the state version of those

13  charges.  I don't believe the defendant's rebutted the

14  presumption that no condition, or combination of

15  conditions, will reasonably assure the safety of the

16  community or the defendant's appearance in court.

17         Thank you, Your Honor.

18         THE COURT:  What do you make of the fact that she

19  apparently was given a bond by the state court and has

20  not been on or has not had any problems on that bond

21  since that time?

22         MR. KENT:  Your Honor, I many times scratch my

23  head, particularly when I see a charge that was there

24  which immediately peaked my interest of attempted escape

25  and when I talked to the officers.  So I'm not sure the

1   reason why someone gave her bond, Your Honor.

2        THE COURT:  The last question is.  She's had a

3   motor vehicle accident, apparently very recently, and

4   she's in a neck brace now.  Does that mitigate against

5   detaining her?

6        MR. KENT:  I certainly am sympathetic to it.  I've

7   been around long enough to understand there are folks who

8   commit crimes that have life threatening conditions, some

9   of them are terminal.  I know certain things are taken

10  into account, but at the same time I'm balancing this

11  against someone who has committed a number of serious

12  felonies in this case, who did attempt to escape from

13  custody.

14       If there wasn't a high speed chase, if there

15  wasn't an attempt to escape from the detention facility.

16  Even with the serious felonies, balancing that against

17  the serious injuries, I might have erred on the side of

18  the recommendation in the Pretrial Services report.  But

19  given what I think is a clear risk of flight, it's been

20  demonstrated on two occasions, I'm really hesitant to do

21  that, Your Honor.

22       THE COURT:  All right.  Thank you.

23       Mr.  Anderson.

24       MR.  ANDERSON:  Thank you, Judge.

25       As you know, there is a presumption of innocence.

1  The Supreme Court has said that pretrial detention is

2  supposed to be the exception and not the norm here in

3  federal court.  I would respectfully disagree with

4  Mr.  Kent when he says we haven't rebutted the

5  presumption.  As the case law interpreting the Bail

6  Reform Act says, including *United States versus*

7  *Dominguez, 783 F 2d, 702, Seventh Circuit, 1986*, quote,

8  "the burden of production to rebut presumption is not a

9  heavy one to meet, closed quote.

10      We produced some evidence in the fact that she has

11  been out on bond for six months.  And if the government

12  wants to, you know, talk about past is the prologue, your

13  two questions are is she going to run away and is she

14  going to commit another crime.  And in the six months

15  that she's been out on bond, the unrebutted testimony in

16  this case is that she hasn't run away and she hasn't

17  violated any conditions of her bond.

18      So if the government wants to talk about past is

19  prologue, we've got strong evidence here of six months of

20  being able to comply with all of the conditions.  So,

21  with that, I would respectfully disagree with Mr.  Kent

22  that we have not rebutted that presumption.  I agreed

23  with the Pretrial Services report that she should be able

24  to have a bond.

25      The state court was aware in -- much more aware of

1   all the facts and circumstances of this alleged escape.

2   And the state court judge decided that, you know, for

3   whatever reason it didn't appear to be as serious as,

4   perhaps, what the paperwork showed.  In fact, there may

5   be some defenses to that charge, I don't know.

6        Judge, we would ask you to accept the Pretrial

7   Services report's recommendations.  Or even if you want

8   to impose more stringent recommendations, that's fine.

9   But especially given her medical conditions.  She's got a

10  lot of followup care that she needs.  Obviously, she's

11  not in a position to physically run away given the damage

12  to her C-7 vertebrae.

13       Judge, again, I would just say that she has

14  rebutted the presumption, and the government has failed

15  to meet its burden of persuasion that detention is

16  appropriate given the unrebutted testimony of six months

17  of no problems.  Thank you, Judge.

18       THE COURT:  Thank you.

19       Anything further by the government?

20       MR. KENT:  Your Honor, I guess -- I certainly

21  understand their argument, and it's a strong one, but at

22  the same time circumstances have changed.  Now we have a

23  defendant who has fled, or attempted to flee, on two

24  occasions on the state version of the case or even flee

25  at a time when she wasn't charged with anything.

1        She was carrying dope.  Whereas, now she's been

2   indicted as part of a 23-defendant narcotics conspiracy

3   where she faces a mandatory minimum of ten years on each

4   of the charges that she's been indicted for.  So I think

5   there has been some change in circumstance, and that is

6   not to the defendant's benefit, and she has not rebutted

7   that presumption, Your Honor.

8        THE COURT:  Thank you.

9        I do appreciate the information that has been

10  provided today.  I've listened closely to the evidence

11  and the arguments.  I've also reviewed the record, and I

12  have studied the Pretrial Services report in advance of

13  this hearing today.

14       As the parties do indicate, there is a rebuttal

15  presumption under *18, U.S. Code, Section 3142* that no

16  condition, or combination of conditions, will reasonably

17  assure the appearance of the defendant as required and

18  the safety of the community.

19       Certain things do mitigate in favor of release in

20  this case.  I see from the Pretrial Services report that

21  -- well she is unemployed.  She has been unemployed for

22  some time, but she is disabled in that regard.

23       I do note, significantly, that she has a medical

24  issue with the healing of C-7 disc issue that she

25  sustained in a recent car crash which I've now been

1    informed occurred earlier this month.

2         I also note, as Mr. Anderson has indicated, she

3    has been placed on bond, apparently, in the state court

4    system and that she has been out on bond without incident

5    for the last approximately six months.

6         On the other side of the equation, of course, the

7    evidence that the government has presented is

8    significant. I see that the underlying event offense in

9    this case occurred in March of 2020. At least her arrest

10   occurred at that time where she attempted to flee.

11   There was a significant amount of methamphetamine

12   involved.

13        As has been testified to, she attempted to flee at

14   a high rate. She was -- she was ultimately apprehended

15   after running on foot and continuing to fight the

16   officer; and was also, then, subject of an attempted

17   escape from the Haywood County detention center.

18        I also note, according to the government's

19   information, three of her codefendants have indicated her

20   involvement as a source of supply in the alleged drug

21   conspiracy. And I note specifically that one

22   codefendants indicated that he had received a pound of

23   methamphetamine from her, the last time being on the day

24   of her arrest.

25        I think there are some things that cut in favor of

```
1    release here, but given the record that I've heard I'm
2    not convinced that that's appropriate in this case.  So I
3    will grant the government's motion and will order that
4    she be detained pending further proceedings.
5           I will note, as Mr.  Anderson discussed
6    previously, he does have the -- the defendant does have
7    the right to move to reopen the hearing upon a change of
8    circumstances or additional evidence.
9           MR.  ANDERSON:  Thank you, Judge.
10          THE COURT:  Thank you.  Anything further from the
11   government?
12          MR. KENT:  No, sir.
13          THE COURT:  All right.  How about from the
14   defense?
15          MR.  ANDERSON:  Not at this time, Your Honor.
16          THE COURT:  Very well.  Thank you then.  That will
17   conclude all the matters in Ms. Jane Gill's case for
18   today.
19               (Off the record at 10:31 a.m.)
20
21
22
23
24
25
```

1

## CERTIFICATE

2        I, Tracy Rae Dunlap, RMR, CRR, an Official Court
Reporter for the United States District Court for the
3    Western District of North Carolina, do hereby certify
that I transcribed, by machine shorthand, from the
4    court's audio recording system, the proceedings had in
the case of UNITED STATES OF AMERICA versus JANE IVISON
5    GILL, Criminal Action Number 1:21-CR-70-12, on August 18,
2021.

6
        In witness whereof, I have hereto subscribed my
7    name, this 24th day of August, 2021.

8                __/S/__Tracy Rae Dunlap__
                 TRACY RAE DUNLAP, RMR, CRR
9                OFFICIAL COURT REPORTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CRIMINAL CASE NO. 1:21-cr-00070-MR-WCM-12

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| (12) JANE IVISON GILL, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court upon the Defendant's Appeal of Order of Detention, which the Court construes as a Motion to Revoke or Amend the Detention Order.  [Doc. 118].

## I.     PROCEDURAL BACKGROUND

On August 3, 2021, the Defendant was charged in a multi-defendant Bill of Indictment with one count of conspiracy to distribute and to possess with intent to distribute a quantity of methamphetamine, in violation of 21 U.S.C. §§ 841(a) and 846; one count of possessing with intent to distribute a quantity of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and one count of possessing with intent to distribute a quantity of

1A 069

methamphetamine, and aiding and abetting in the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. [Doc. 3].

On August 16, 2021, the Defendant's initial appearance was held, at which time the Honorable W. Carleton Metcalf, United States Magistrate Judge, appointed counsel. On August 18, 2021, the Defendant's arraignment and detention hearing was held. After reviewing the evidence presented by the parties, as well as the arguments of counsel, Judge Metcalf found that there was clear and convincing evidence that the release of the Defendant would create a serious risk of harm or danger to the safety of the community. He further found, by a preponderance of the evidence, that the release of the Defendant would create a risk of flight. Accordingly, Judge Metcalf ordered the Defendant to be detained pending trial. [Doc. 111]. This appeal followed. [Doc. 118].

## II.    STANDARD OF REVIEW

Title 18 of the United States Code, section 3145, governs the review and appeal of detention orders. This statute provides, in pertinent part, as follows:

> If a person is ordered detained by a magistrate judge, … the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

2

1A 070

18 U.S.C. § 3145(b).  In reviewing a motion to revoke or amend an order of detention, the Court reviews the Magistrate Judge's Order de novo.  United States v. Stewart, 19 F. App'x 46, 48 (4th Cir. 2001).  The Court "must make an independent determination of the proper pretrial detention or conditions of release."  Id.

## III.    ANALYSIS

Section 3142 of Title 18 of the United States Code provides that if, after holding a hearing, the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community," the Court shall order the detention of the person pending trial.  18 U.S.C. § 3142(e)(1).  There is a presumption of detention, rebuttable by the defendant, if the Court finds that there is probable cause to believe that the defendant committed certain enumerated offenses.  See 18 U.S.C. § 3142(e)(3).

In determining whether detention pending trial is appropriate, the Court must consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;

3

IA 071

>  (3) the history and characteristics of the person, including –
>
>>  (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>>  (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
>  (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

Upon reviewing the evidence presented at the detention hearing, the Court finds in accordance with the Magistrate Judge's factual findings and legal conclusions that detention is warranted in this case.  The Defendant concedes that, based upon the record before the Court, there is a presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant and the safety of the community. While the Defendant has been released on bond for related state charges,

4

1A 072

the Court finds and concludes that the Defendant has failed to rebut the presumption of detention.

First, the nature and circumstances of the offenses charged involve a controlled substance. The Defendant is alleged to have conspired to distribute 50 grams or more of actual methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. [Doc. 3 at 2-3]. The Defendant is also alleged to have possessed with intent to distribute 50 grams or more of actual methamphetamine and aided and abetted the same. [Id. at 11-12]. The nature and circumstances of the Defendant's offenses therefore weighs in favor of detention. See 18 U.S.C. § 3142(g)(1).

Moreover, the weight of the evidence against the Defendant appears to be compelling. At the Defendant's detention hearing, the Government presented the testimony of Officer Brian Leopard, a task force officer employed by the Swain County Sheriff's Office and assigned to the Drug Enforcement Administration. Through Officer Leopard, the Government presented evidence that identified the Defendant as a source of supply of methamphetamine. The Government also proffered evidence that the Defendant was found with methamphetamine in a bag matching a different bag found at the residence of Rebecca Barker, a co-defendant in this case,

5

IA 073

and that there were transactions totaling $23,000 between the Defendant and co-defendant Barker. Thus, the weight of the evidence against the Defendant is a factor that also weighs in favor of detention. <u>See</u> 18 U.S.C. § 3142(g)(2).

Further, the record indicates that the Defendant has attempted to flee on two occasions. First, the Defendant attempted to avoid apprehension by driving at a high rate of speed and then fleeing on foot. After she was apprehended, the Defendant also attempted to escape from the Haywood County Detention Center, where she was being held on state charges. The Defendant's history of flight attempts weighs in favor of detention. <u>See</u> 18 U.S.C. § 3142(g)(3).

Having conducted an independent review of the audio recording and transcript of the detention hearing and the Magistrate Judge's Order, as well as having considered the arguments of counsel, the Court concludes that the Magistrate Judge carefully considered each factor set forth in 18 U.S.C. § 3142(g) and properly concluded that the Defendant has not rebutted the presumption of detention. Accordingly, the Defendant's motion to revoke or amend the detention order is denied.

IA 074

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Appeal of Order

of Detention [Doc. 118], which the Court construes as a Motion to Revoke or

Amend the Detention Order, is **DENIED**, and the Defendant shall remain

detained.

**IT IS SO ORDERED.**

Signed: September 20, 2021

Martin Reidinger
Chief United States District Judge

7

1A 075

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 1:21-cr-00070-MR-WCM |
| JANE IVISON GILL, | ) | -12 |
| *Defendant.* | ) | |
| | ) | |

## NOTICE OF APPEAL

COMES NOW Defendant Jane Ivison Gill and hereby appeals to the U.S. Court of Appeals for the Fourth Circuit the order of detention entered against her and the district court's affirmance of the same. [Dkts. 111, 231].

Dated: September 20, 2021

Respectfully submitted,

JANE IVISON GILL

s/Howard W. Anderson III
Howard W. Anderson III
N.C. Bar #50561
S.C. Bar# 100329

Law Office of
Howard W. Anderson III, LLC
PO Box 661

1

1A 076

176 E. Main St.
Pendleton, SC 29670
864-643-5790 (P)
864-332-9798 (F)
howard@hwalawfirm.com

## CERTIFICATE OF SERVICE

I, Howard W. Anderson III, certify that I filed a copy of the foregoing paper using the Court's CM/ECF system, which will deliver a copy to all counsel of record except for the following, whom I have this day served by U.S. Mail:

n/a

s/Howard W. Anderson III
Howard W. Anderson III
N.C. Bar #50561
S.C. Bar# 100329

1A 077

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/Howard W. Anderson III</u>
Howard W. Anderson III

COS